UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

In re:                                                          Chapter 11

PAMECO CORPORATION,                                             Case No. 03-13589 (ALG)

                               Debtor.              Jointly Administered


--------------------------------------------------------------------x
BUCHWALD CAPITAL ADVISORS LLC, TRUSTEE
OF THE PAMECO CORPORATION, et al.,
LIQUIDATING TRUST,

                         Plaintiff,


        -against-                                       Adv. Proc. No. 05-01970 (ALG)


METL-SPAN I., LTD.,

                         Defendant.

--------------------------------------------------------------------x

## MEMORANDUM OF OPINION

A P P E A R A N C E S :

MORRISON COHEN, LLP
Co-Counsel for the Liquidating Trustee
  By:   Joseph Moldovan, Esq.
       Michael R. Dal Lago, Esq.
909 Third Avenue
New York, New York 10022

ASK FINANCIAL LLP
Co-Counsel for the Liquidating Trustee
  By:   Karen M. Scheibe, Esq.
       Joseph L. Steinfeld, Esq.
       Joseph A. Hess, Esq.
2600 Eagan Woods Drive, Suite 220
Eagan, Minnesota 55121

KAZLOW & KAZLOW
Co-Counsel for Metl-Span I., Ltd.
  By:  Gene R. Kazlow, Esq.
         Stuart L. Sanders, Esq.
237 W. 35th Street, 14th Floor
New York, New York 10001

BERNSTEIN LAW FIRM, P.C.
Co-Counsel for Metl-Span I., Ltd.
  By:  Kirk B. Burkley, Esq.
         Robert S. Bernstein, Esq.
Suite 2200 Gulf Tower
Pittsburgh, Pennsylvania 15219


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

### Introduction

This is an adversary proceeding brought by Buchwald Capital Advisors LLC,

Trustee of the Pameco Corporation, et al., Liquidating Trust ("Plaintiff"), against Metl-

Span I., Ltd. ("Defendant") seeking the avoidance and recovery, pursuant to Bankruptcy

Code §§ 547-550, of a transfer made by Pameco Corporation (the "Debtor") to

Defendant.  Plaintiff and Defendant have both moved for summary judgment on the

claims raised in the adversary complaint.

### Background

The Debtor was a distributor of heating, ventilation, air conditioning and

refrigeration equipment and related materials.  Defendant is a producer and supplier of

metal products.  The Debtor and Defendant were parties to a prepetition construction

project with three parties, Shamrock, Inc. ("Shamrock"), Tropicana, Inc. ("Tropicana")

and BMP Moorestown Realty, LLC ("BMP").  The project involved the construction of a

Tropicana facility on property located in New Jersey that was owned by BMP (the

"Premises"). Shamrock was the general contractor on the project, the Debtor served as a

subcontractor for Shamrock, and Defendant was a supplier to the Debtor. The Debtor

arranged for the purchase of certain metal products from Defendant and contracted with

Shamrock to provide these products for the construction project.

The following facts are established in the moving affidavits, and they are not

contested in material part. Defendant shipped certain products to the Premises on

December 30, 2002. On December 31, 2002, Defendant sent an invoice to the Debtor for

the products in the amount of $25,943.91, with a payment date of January 30, 2003. The

Debtor failed to make payment by such date, and during the following month Defendant

called the Debtor several times in an effort to obtain payment of the amounts owed. On

February 28, 2003, the Debtor wrote a check to Defendant in the amount of $25,943.91,

but subsequently stopped payment on the check, and it did not clear.

On March 12, 2003, Defendant requested that the Debtor remit payment forthwith

by cashier's check. The Debtor failed to make such payment and on March 21, 2003,

Defendant recorded a construction lien claim against the Premises in the amount of

$25,943.91 (the "Lien"), pursuant to N.J. Stat. Ann. §2A: 44A-8. Defendant delivered

notification of the Lien to BMP, Tropicana and the Debtor. On March 21, 2003,

Shamrock issued a check to the Debtor in the amount of $25,846.35, and on March 28,

2003, the Debtor issued a check to the Defendant for $25,943.91 (the "Payment").

On April 1, 2003, the Controller for Shamrock sent a fax to Defendant's then

counsel, stating:

> I am following up on the lien claim that you filed on behalf of your client,
> Metal Span [sic]. It is my understanding last week that our supplier,
> Pameco Corp. had made arrangements to either send you a certified check
> or overnight check. Would you please confirm that you have indeed

received the necessary funds so that I may inform our customer of its
resolution.

(Ex. A to Aff. of Raymond Miller, the "Shamrock Fax.")  The Debtor's check cleared on

or about April 7, 2003, and Defendant released the Lien on April 16, 2003.

On June 3, 2003, the Debtor filed a voluntary petition for relief under Chapter 11

of the Bankruptcy Code.  On November 8, 2004, this Court confirmed the Debtor's

Amended Liquidating Plan (the "Plan"), and Plaintiff was appointed Liquidating Trustee

in accordance therewith.

Thereafter, Plaintiff commenced this adversary proceeding seeking the avoidance

and recovery of the Payment on the following grounds: (i) avoidance of a preference

under § 547(b); (ii) avoidance of a fraudulent conveyance under § 548(a)(1)(B); (iii)

recovery of a postpetition transfer under § 549; and (iv) recovery of an avoidable transfer

under §550.  Both parties have filed motions for summary judgment on all claims raised

in Plaintiff's complaint.

For the reasons set forth below, Defendant's motion for summary judgment is

denied.  Plaintiff's motion for summary judgment is granted only with respect to those

claims in the complaint relating to § 547 of the Bankruptcy Code.

### Discussion

In accordance with Bankruptcy Rule 7056, which incorporates Fed. R. Civ. P. 56,

summary judgment may be granted "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); *Morenz v. Wilson-Coker*, 415 F.3d 230, 234 (2d Cir. 2005).

4

The moving party bears the burden of demonstrating the absence of any genuine issue of
material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *see also Ames
Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc.,* 161 B.R. 87, 89 (S.D.N.Y. 1993).  A
fact is considered material if it might affect the outcome of the suit under governing law.
*See Anderson*, 477 U.S. at 248.  When the court considers a motion for summary
judgment, it must resolve all ambiguities and draw all permissible factual inferences in
favor of the party against whom summary judgment is sought.  *Heyman v. Commerce &
Indus. Ins. Co.,* 524 F.2d 1317, 1318 (2d Cir. 1975); *see also Ames Dep't Stores, Inc.,*
161 B.R. at 89.  However, a party opposing a motion for summary judgment cannot rest
on its pleadings but must provide evidence to support the essential elements of its case.
*See Anderson*, 477 U.S. at 248; *DePippo v. Kmart Corp.*, 335 B.R. 290, 294-95
(S.D.N.Y. 2005), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574
(1986).

The parties have not pursued any contentions on these summary judgment
motions as to the applicability of the provisions of the Bankruptcy Code relating to
fraudulent and post-petition transfers, §§ 548(a)(1)(B) and 549, and have instead properly
focused on whether the Payment can be avoided as a preference under § 547(b).[1]

---

[1] Section 547(b), as applicable to this case, provides:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an
> interest of the debtor in property—
> (1)  to or for the benefit of a creditor;
> (2)  for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3)  made while the debtor was insolvent;
> (4)  made—
>      (A)  on or within  90 days before the date of the filing of the petition; or
>      (B)  between 90 days and one year before the date of the filing of the petition, if such
>           creditor at the time of such transfer was an insider; and
> (5)  that enables such creditor to receive more than such creditor would receive if—
>      (A)  the case were a case under chapter 7 of this title;
>      (B)  the transfer had not been made; and

Specifically, as argued by the parties, the issues for determination are as follows: (i) does

the Payment constitute a transfer of the Debtor's property; (ii) does the Payment satisfy

the requirement of § 547(b)(5) that the Payment enabled Defendant to receive more than

it would have received if the Payment had not been made and Defendant had been paid to

the extent provided by Chapter 7 of the Bankruptcy Code; and (iii) is Defendant able to

invoke one of the exceptions to the avoidance of a preference in § 547(c) of the

Bankruptcy Code?

### I.        The Payment Constitutes a Transfer of the Debtor's Property

A prepetition transfer may not be avoided as a preference under the Bankruptcy

Code unless it qualifies as a "transfer of an interest of the debtor in property," as set forth

in the introductory clause of § 547(b).  Defendant asserts that the Payment does not meet

this requirement because, as a matter of equity, the Court should impose a constructive

trust in favor of Defendant on the funds Shamrock paid to the Debtor.  This in turn would

make the Payment a transfer of Shamrock's, rather than the Debtor's, property.

Defendant claims that the imposition of a constructive trust is required because (i)

Shamrock allegedly transferred funds to the Debtor with the expectation that the Debtor

would use these funds to satisfy Defendant's Lien, and (ii) the Debtor was under a legal

obligation to convey Shamrock's funds to Defendant because it knew or should have

known of Shamrock's expectation.

The parties do not dispute that New Jersey law governs whether a constructive

trust should be imposed on the funds paid by Shamrock because the funds were allegedly

---

(C)  such creditor received payment of such debt to the extent provided by the provisions
of this title.

6

paid in order to remove a lien imposed on New Jersey property pursuant to New Jersey law. *See In re Howard's Appliance Corp.*, 874 F.2d 88, 93-4 (2d Cir. 1989) ("One must look to state law . . . to determine whether to impose a constructive trust on property within the debtor's possession.")  In order to prevent unjust enrichment, New Jersey courts will impose a constructive trust where the recipient of a transfer of property acquired the property through wrongful behavior, such as "fraud, mistake, undue influence or breach of confidential relationship." *Id.* at 94, quoting *D'Ippolito v. Catoro*, 51 N.J. 584, 588, 242 A.2d 617, 619 (1968); *Flanigan v. Munson*, 175 N.J. 597, 608, 818 A.2d 1275 (2003).

In this case, Defendant's claim that a constructive trust should be imposed on the funds Shamrock paid to the Debtor fails because there is no evidence of misconduct or wrongful behavior on the part of the Debtor.  By alleging that the Debtor had a legal obligation to convey Shamrock's funds to Defendant, Defendant appears to argue that the Debtor would have breached a confidential or special relationship with Shamrock had the Payment not been made.  However, the record demonstrates that the Debtor and Shamrock had a conventional business relationship, requiring no more than that Shamrock pay for the products it contracted to buy from the Debtor.  Defendant has failed to substantiate its contention that the Debtor was under a legal obligation to any party to hold the funds it received from Shamrock in trust for Defendant or to satisfy Defendant's claim with any particular funds.  Indeed, the Debtor did not breach any duty when it did in fact pay Defendant, and Defendant cites no authority that a constructive trust arises because a payment can be subsequently avoided as a preference.

Defendant has also failed to present evidence of unjust enrichment.  Defendant

argues that Shamrock had a right under N.J. Stat. § 2A: 44A-12 to withhold and deduct

the amount of the Lien from the funds it owed the Debtor.[2]  Shamrock allegedly waived

this right by paying the Debtor $25,846.35, with the expectation that the Debtor would

use these funds to satisfy Defendant's Lien claim.  However, Shamrock's alleged

expectation, without more, does not support a finding that the Debtor was unjustly

enriched by receiving a payment that was due.  If the Debtor had filed its petition

immediately thereafter, it would not have been unjustly enriched by refusing to make the

Payment, and the estate would not be unjustly enriched at this point in time by a recovery

of the Payment.

The Second Circuit has recognized the tension between the policies of bankruptcy

law and the imposition of constructive trusts, and since imposition of a constructive trust

after bankruptcy dilutes the recovery available to unsecured creditors, "bankruptcy courts

are generally reluctant to impose constructive trusts without a substantial reason to do

so."  *Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 218 (2d

Cir. 2004), quoting *In re Haber Oil*, 12 F.3d 426, 436 (5th Cir. 1994).  In this case, there

has been no showing of wrongful conduct or unjust enrichment, and the Court finds no

reason to impose a constructive trust in favor of Defendant.  This is especially true

because the courts have developed the related doctrine of earmarking to cover situations

like the one at bar.  Funds that are paid over to a debtor earmarked for payment to

---

[2] N.J. Stat. § 2A: 44A-12 provides, in part:

> Upon receipt of notice of a lien claim, the owner shall be authorized to withhold and deduct the amount claimed from the unpaid part of the contract price that is or thereafter may be due and payable to the contractor or subcontractor, or both.

particular creditors may, in certain circumstances, be considered as if they were not

property of the debtor and not recoverable as a preferential transfer under § 547(b).  *See,*

*e.g., Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 346 (Bankr. S.D.N.Y. 1999).

However, the earmarking doctrine applies principally where a third party lends money to

a debtor for the purpose of paying such funds to an old creditor and becomes a creditor

itself, so that a new creditor is in effect substituted for the old creditor and the estate's

assets are not diminished.  *See Glinka v. Bank of Vermont (In re Kelton Motors)*, 97 F.3d

22, 28  (2d Cir. 1996); *see also United States Lines (S.A.) v. United States (In re McLean*

*Indus.)*, 162 B.R. 410  (S.D.N.Y. 1993), *rev'd on other grounds*, 30 F.3d 385 (2d Cir.

1994).  No new creditor is present in this case.  Moreover, earmarking does not apply

where a debtor exercises control over the funds, even for a brief period.  *See In re*

*McLean Indus.*, 162 B.R. at 420-21.  Even if Shamrock transferred the funds to the

Debtor with the expectation that the Debtor would use them to pay its indebtedness to

Defendant, the Debtor did not borrow these funds, Shamrock did not become a creditor as

a result of the transfer, and the Debtor exercised control over the payment.  Thus, as

Plaintiff states, "this case does not have the appropriate players in order to have an

earmarking situation."  (Pl.'s Mem. in Supp. of Mot. at 15.)

> **II.    The Payment Enabled Defendant to Receive More Than It Would
> Have Received Under Chapter 7 of the Bankruptcy Code**

Section 547(b)(5) of the Bankruptcy Code provides that "the trustee may avoid

any transfer of an interest of the debtor in property . . . that enables such creditor to

receive more than such creditor would receive if (A) the case were a case under chapter 7

of this title; (B) the transfer had not been made; and (C) such creditor received payment

of such debt to the extent provided by the provisions of this title."  The transferee must

therefore have "received more as a result of the preference than if the preference was

never paid, and instead, the transferee received a distribution on its claim in a

hypothetical chapter 7 case." *Savage & Assoc., P.C. v. A.I. Credit Corp. (In re Teligent,*

*Inc.)*, 337 B.R. 39, 45 (Bankr. S.D.N.Y. 2005).  Defendant argues that Plaintiff has failed

to meet the necessary elements of § 547(b)(5) because at the time the Payment was made,

Defendant was a fully secured creditor by virtue of a construction lien on the Premises.

    Generally, a prepetition transfer to a fully secured creditor will not be considered

preferential because such creditor would be paid in full in a hypothetical Chapter 7

liquidation as a result of realization on its claim. *Official Comm. of Unsecured Creditors*

*of 360Networks (USA) Inc. v. AAF – McQuay, Inc. (In re 360Networks (USA) Inc.)*, 327

B.R. 187, 190 (Bankr. S.D.N.Y. 2005), citing 5 LAWRENCE P. KING ET AL., COLLIER ON

BANKRUPTCY, ¶ 547.03[7] (15th ed. 2002); *In re Pitman*, 843 F.2d 235, 241 (6th Cir.

1988).  Defendant relies on its status as a fully secured creditor by virtue of the Lien on

the Premises, but the Premises was the property of BMP, not the Debtor, and Defendant

does not allege that it had any security interest in the Debtor's assets.  As discussed

below, a prepetition transfer to a creditor that is fully secured by property of a third party

in which the debtor holds no interest is subject to avoidance and does not come within the

§ 547(b)(5) exception.

    Similar facts were at issue in *Executive Inv. of Virginia, Inc. v. Creative Fin.*

*Mgmt., Inc.* (*In re Virginia-Carolina Fin. Corp.*), 954 F.2d 193 (4th Cir. 1992).  There a

creditor received a prepetition transfer on account of a loan to the debtors, the loan was

secured by a promissory note due on a mortgage fund that had been organized by an

officer of the debtors, and the lender's collateral was an asset of the mortgage fund, not

property of the debtors.  The Court of Appeals for the Fourth Circuit stated: "[W]e cannot accept the contention that a creditor's security interest in an asset of an entity not in bankruptcy, which 'fully collateralizes' a loan to the bankrupt, enables the creditor to elect to draw from the bankruptcy estate 100% of the debt owed, at the expense of the debtor's other creditors."  *In re Virginia-Carolina Fin. Corp.*, 954 F.2d at 198.  The Court of Appeals noted that under the Bankruptcy Code, a creditor is considered secured only to the extent of the value of an interest in property of the estate.  *Id.*, citing 11 U.S.C. § 506(a).[3]  Indeed, the purpose of § 547 is not to establish "whether a creditor may have recovered all of the monies owed by the debtor *from any source whatsoever*, but instead . . . whether the creditor would have received less than a 100% payout in a Chapter 7 liquidation."  *Id.* at 199, citing Vern Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand. L. Rev. 713, 735-37 (1985).  "This interpretation reflects the common sense notion that a creditor is no better off vis-à-vis the other creditors of the bankruptcy estate than he or she would have been had the creditor waited for liquidation and distribution of the assets of the estate."  *Id.*, citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 177-78 (1977).

By its plain language, the test set forth in § 547(b)(5) of the Bankruptcy Code is meant to determine what a creditor would receive in a hypothetical Chapter 7 case of the debtor, and whether such amount is more than what was actually received by the creditor through the alleged preferential transfer.  Defendant has not alleged that it is secured by

---

[3]   Section 506(a)(1) of the Bankruptcy Code provides, in part:
> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

property of the Debtor's estate, and since there is no dispute that the anticipated recovery

of unsecured creditors under the Plan will be less than 100 cents on the dollar, Defendant

clearly recovered from the Debtor more than it would have in a hypothetical Chapter 7

liquidation, and the transfer remains subject to avoidance under § 547 of the Bankruptcy

Code.

Defendant argues that other creditors forced to return a preference may look to

other sources to recover these funds, but that Defendant will have no such avenue for

recovery. It is a rare case where a creditor is in a position to recoup funds it has been

required to disgorge under § 547. In any event, the purpose behind § 547 is not to return

the Debtor and the transferee to their positions at the time of the bankruptcy filing.

Rather, it is to ensure that the creditor does not attain a better position than other creditors

of the estate.

> Equality of distribution among creditors is a central policy of the
> Bankruptcy Code. According to that policy, creditors of equal priority
> should receive pro rata shares of the debtor's property. Section 547(b)
> furthers this policy by permitting a trustee in bankruptcy to avoid certain
> preferential payments made before the debtor files for bankruptcy. This
> mechanism prevents the debtor from favoring one creditor over others by
> transferring property shortly before filing for bankruptcy.

*Begier v. IRS*, 496 U.S. 53, 58 (1990). Therefore, in making a determination under §

547(b)(5), a Court does not focus on other sources of recovery available to a transferee,

but rather what such transferee would receive vis-à-vis other creditors within such

creditor's particular class. *See Palmer Clay Products v. Brown*, 297 U.S. 227, 229 (1936)

("Whether a creditor has received a preference is to be determined, not by what the

situation would have been if the debtor's assets had been liquidated and distributed

among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results.")

Defendant's reliance on this Court's decision in *Official Comm. of Unsecured Creditors of 360 Networks (USA), Inc. v. AAF-McQuay, Inc. (In re 360 Networks (USA), Inc.)*, 327 B.R. 187 (Bankr. S.D.N.Y. 2005), is misplaced.  Defendant cites *In re 360 Networks* for the holding that a creditor's inchoate mechanics lien immunized a payment it had received from a preference action, in that otherwise "holders of inchoate statutory liens would be faced with an unreasonable Hobson's choice between accepting payment or taking the commercially unreasonable step of declining payment in order to perfect an inchoate statutory lien."  *Id.* at 192, citing *Ricotta v. Burns Coal & Building Supply Co.*, 264 F.2d 749 (2d Cir. 1959).  However, both *Ricotta* and *In re 360 Networks* dealt with a statutory lien that would have been imposed directly upon the debtor's property and are inapposite under the facts of this case.

Defendant argues that if a preference recovery is permitted in the case at bar, creditors holding valid mechanics liens will have to make the unreasonable choice of refusing payment from a third party in order to protect themselves.  (Def.'s Mem. of Law in Supp. of Summ. J. Mot. at 6.)  However, Defendant did not receive payment directly from a third party – Shamrock – and it could have protected itself by obtaining indemnification rights from Shamrock or BMP before releasing the Lien.  In any event, while Defendant highlights the importance of the mechanics lien in the construction industry, the same argument can be put forward with regard to the appropriate functioning of the bankruptcy system.  Defendant's argument would in effect place those with statutory liens on property that was not even related to the debtor's estate in a

13

position that would essentially exempt them from §547 of the Bankruptcy Code. This is not provided for in § 547(b)(5).

### III.   Exceptions to Preferential Transfer Under § 547(c) of the Bankruptcy Code

Defendant asserts that the following exceptions to a preferential transfer are applicable in this case: (i) contemporaneous transfer for new value under § 547(c)(1) of the Bankruptcy Code; and (ii) new value to or for the benefit of the Debtor under § 547(c)(4) of the Bankruptcy Code. Additionally, Plaintiff raises the ordinary course of business exception under § 547(c)(2) for the first time in its summary judgment motion. A creditor against whom a preference suit is sought has the burden of proving one of the defenses in § 547(c) by a preponderance of the evidence. 11 U.S.C. 547(g); *In re Roblin Industries, Inc. (Lawson v. Ford Motor Co.)*, 78 F.3d 30, 39 (2d Cir. 1996); *Savage & Assoc., P.C. v. Level (3) Communications (In re Teligent, Inc.)*, 315 B.R. 308, 315 (Bankr. S.D.N.Y. 2004).

### A.  Section 547(c)(1)

Defendant argues that the "contemporaneous transfer" exception to a preferential transfer under § 547(c)(1) of the Bankruptcy Code is applicable because Defendant released the Lien upon the Debtor's payment to Defendant, intending such release to be a contemporaneous transfer for new value and in fact making it a substantially contemporaneous exchange**.** Section 547(c)(1) provides that a transfer cannot be avoided "to the extent that such transfer was – (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." Three elements are required to satisfy this defense: "(i) the transfer must be for new value given

14

to the debtor; (ii) the transfer must be intended to be a contemporaneous exchange; and

(iii) the transfer must be in fact a substantially contemporaneous exchange." *Official

Comm. of Unsecured Creditors of 360 Networks (USA) Inc. v. U.S. Relocation Serv., Inc.*

(*In re 360Networks (USA) Inc.*), 338 B.R. 194, 204 (Bankr. S.D.N.Y. 2005) (internal

citations omitted).

It is doubtful that Defendant could establish that both the debtor and the transferee

intended the transfer to be contemporaneous, as required by § 547(c)(1) of the

Bankruptcy Code.[4]   Moreover, the record includes Defendant's statement in its objection

to Plaintiff's summary judgment motion that it "does not dispute that the Transfer was

made on account of antecedent debt."   (Mem. of Law in Supp. of Metl-Span, I., Ltd.'s

Obj. to Plaintiff's Mtn. for Summ. J. with respect to Plaintiff's Claims against Defendant

§ II (c)).   A payment made on account of an antecedent debt is not a contemporaneous

exchange.  *In re 360Networks (USA) Inc.*, 338 B.R. at 206, citing *Ajayem Lumber Corp.*

*of Tampa v. Keener Lumber Co., Inc.* (*In re Ajayem Lumber Corp.*), 143 B.R., 347, 352

(Bankr. S.D.N.Y. 1992); *In re Alpex Computer Corp.*, 60 B.R. 315, 319 (Bankr. D. Colo.

1986).

In any event, Defendant must also show that the Debtor received value as a result

of the release of the Lien.  Defendant argues that value was provided to the Debtor

because any action that BMP, Shamrock or Tropicana possibly had against the Debtor for

indemnification, contribution or breach of contract resulting from the Lien was

---

[4]   Defendant points to Plaintiff's statement in the Amended Response to Interrogatory No. 15 that "since
Defendant was paid the Transfer, it released the lien."  (Def.'s Mem. of Law in Supp. of Summ. J. Mot. at
7.)  Defendant believes this to be an admission of Plaintiff's intent that the transfer be a contemporaneous
exchange.  Without more, the Court can only view this as a simple statement of cause-and-effect that
points, at most, to Defendant's intention.  The statement does not clearly indicate the Debtor's intent or that
the Debtor made the payment for purposes of having the lien released, as opposed to making a payment on
the antecedent debt owed by the Debtor to Defendant.

extinguished.  Therefore, it is contended, new value to or for the benefit of the Debtor

was provided in that the Debtor was freed of its obligations to BMP, Shamrock or

Tropicana.  (Def.'s Mem. of Law in Supp. of Summ. J. Mot. at 3.)  However, while it is

true that in certain circumstances a third party may provide the requisite new value to a

debtor,[5] the value described by Defendant was mere forbearance, which does not meet

the statutory test.  Section 547(a)(2) defines new value as "money or money's worth in

goods, services, or new credit, or release by a transferee of property previously

transferred to such transferee in a transaction that is neither void nor voidable by the

debtor or the trustee under any applicable law, including proceeds of such property, but

does not include an obligation substituted for an existing obligation."  "Forbearance alone

does not constitute new value."  *In re 360Networks (USA) Inc.*, 338 B.R. at 205, citing *In*

*re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 609 (Bankr. S.D.N.Y. 1986); *In re McLean*

*Indus., Inc.*, 132 B.R. 247, 263-64 (Bankr. S.D.N.Y. 1991), *rev'd on other grounds*, 30

F.3d 385 (2d Cir. 1994); *In re 360 Networks (USA), Inc.*, 327 B.R. at 191.

        The fact that BMP, Shamrock and Tropicana might no longer have been able to

file hypothetical claims against the Debtor does not constitute new value under §

547(c)(1).  The underlying policy behind the defense is "'to encourage creditors to

continue to deal with troubled debtors,' and transfers protected under § 547(c)(1) are not

preferential 'because other creditors are not adversely affected if the debtor's estate

receives new value.'"  *In re 360Networks (USA) Inc.*, 338 B.R. at 204, quoting *Jones*

---

[5]    *See In re 360Networks (USA) Inc.*, 338 B.R. at 205, citing *Jones Trust Lines, Inc. v. Central States, S.E.
and S.W. Areas Pension Funds (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 327-28 (8th Cir. 1997); *In re
Kumar Bavishi & Assoc. v. S.S. Mahajan (In re Kumar Bavishi & Assoc.)*, 906 F.2d 942, 945 (3d Cir.
1990); *In re E.R.. Fegert, Inc. v. Seaboard Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 959 (9th Cir.
1989); *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (In re  Fuel Oil Supply & Terminaling, Inc.)*,
837 F.2d 224, 228-30 (5th Cir. 1988).

*Trust Lines, Inc. v. Central States, S.E. and S.W. Areas Pension Funds (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 326 (8th Cir. 1997); 5 COLLIER ON BANKRUPTCY ¶ 547.04[1][b] (15th ed. 2005).    Defendant has not shown that tangible new value flowed into the estate that would compensate for the impact the transfer had on the Debtor's remaining creditors.

Defendant relies on *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.)*, 837 F.2d 224 (5th Cir. 1988), for the proposition that payment to a creditor can be exempt from § 547 because a three-party transaction involved a contemporaneous exchange for new value.  In that case, however, the debtor had provided the transferee with letters of credit obtained from banks, which in return had been provided with a security interest in the debtor's assets.  When the transferee was paid by the debtor, the banks released their collateral directly to the debtor, thereby creating value in the estate that was then available to the debtor's other creditors.  *See id.* at 228-29.  No comparable influx of value resulted here.  There is only an unsubstantiated possibility that BMP, Tropicana or Shamrock might or might not have been able to assert a claim against the Debtor if it had not paid Defendant.  This is not enough, and Defendant has not established a defense under § 547(c)(1).

**B.  Section 547(c)(2)**

Section 547(c)(2) of the Bankruptcy Code, as applicable here, provides that a transfer may be avoided "to the extent that such transfer was (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms . . ."

17

Defendant relies on the ordinary course of business defense for the first time in its response to Plaintiff's summary judgment papers.

In determining whether a transfer is made in the ordinary course of business of the debtor and the transferee under § 547(c)(2)(A) of the Bankruptcy Code, a court examines several factors, including (i) the prior course of dealing between the parties, (ii) the amount of the payment, (iii) the timing of the payment, (iv) the circumstances of the payment, (v) the presence of unusual debt collection practices, and (vi) changes in the means of payment. *See Official Comm. of Unsecured Creditors of Cyberrebate.com, Inc. v. Gold Force Int'l, Ltd. (In re Cyberrebate.com, Inc.)*, 296 B.R. 639, 643 (Bankr. E.D.N.Y. 2003); *see also Yurika Foods Corp. v. United Parcel Serv. (In re Yurika Foods Corp.)*, 888 F.2d 42, 45 (6th Cir. 1989); *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563, 1566 (11th Cir. 1986).

There is no dispute that the facts of this case involve repeated attempts on the part of Defendant to collect the amounts due from the Debtors, ultimately culminating with the filing of the Lien. These actions are adequate to determine that the payments made to Defendant fall outside of the ordinary course of business. Payments made as a result of unusual economic pressure and unusual debt collection practices are not in the ordinary course of business. *See In re 360Networks*, 338 B.R. at 210-11, citing *Marathon Oil Co.*, 785 F.2d 1563 (unusual creditor pressure to compel payment was not in the ordinary course of business); *Florida Steel Corp. v. Stober (In re Indus. Supply Corp.)*, 127 B.R. 62 (M.D. Fla. 1991), *aff'd* 961 F.2d 1582 (11th Cir. 1992) (unusual creditor pressure alone could negate an ordinary course defense); *Gold Force Int'l, Ltd. v. Official Comm. of Unsecured Creditors of Cyberrebate.com, Inc.*, 2004 U.S. Dist. LEXIS 2089

(E.D.N.Y. Feb. 10, 2004) (creditor's collection efforts during the preference period could

remove a payment from the scope of the ordinary course of business).

Additionally, payments substantially delayed beyond the due date are not in the

ordinary course of business. *See In re Cyberrebate.com, Inc.*, 296 B.R. at 643. Where

(as here) there is no evidence of a prior history of dealings between the parties, the court

can also consider the question whether the debtor followed the payment terms contained

in the contract between the parties. *See In re Sunset Sales, Inc.*, 220 B.R. 1005, 1020-21

(10th Cir. BAP 1998). Payment in this case was delayed for approximately 58 days after

the initial due date. While Defendant argues that a question of material fact exists as to

whether the Debtor complied with the contract, this is backed only by the assertion that

the Debtor informed Defendant's employees that the Debtor could not make the

payments because it "didn't have the funds yet." (Mem. of Law in Supp. of Metl-Span,

I., Ltd.'s Obj. to Plaintiff's Mtn. for Summ. J. with respect to Plaintiff's Claims against

Defendant § II (e)(1)). Defendant argues that "[t]his statement implies that the Debtor

was obligated to pay its, and in fact did pay, suppliers only when it received payments

from Shamrock." (Id.) Defendant points to no part of the invoice that incorporates these

terms, and the Court does not find that Defendant has met its burden of establishing that

this was a transaction made in the ordinary course of business between the Debtor and the

Defendant.

A transfer will be considered made in accordance with ordinary business terms

under § 547(c)(2)(B) of the Bankruptcy Code when it is made under "those terms

employed by similarly situated debtors and creditors facing the same or similar problems.

If the terms in question are ordinary for industry participants under financial distress, then

that is ordinary for the industry." *In re Roblin Indus.*, 78 F.3d at 42. The only evidence

provided by Defendant as to the industry practice with regard to billing is that "[i]t is

ordinary in the construction industry to 'pay when paid'" and that "the construction

industry is widely known as a 'slow pay' industry, particularly when the payments from

the owner are behind schedule." (Mem. of Law in Support of Metl-Span, I, Ltd.'s Obj. to

Pl.'s Mtn. For Summary Judgment at (II)(E)). Whether or not this is correct, the facts in

this case involve a payee that repeatedly demanded payment of an overdue debt, placed a

lien on property of a third party when the debt was not paid, and released its lien only

when the check that paid the debt cleared (a prior check in payment of the debt having

bounced). Defendant cannot seriously claim that this constituted ordinary course of

business, even in the construction industry. Defendant has not met and cannot meet the

burden necessary to defense under § 547(c)(2) is rejected.

## C. Section 547(c)(4)

Defendant also asserts that the "new value" exception under § 547(c)(4) of the

Bankruptcy Code is applicable because the Payment absolved the Debtor of liability in

respect of certain possible contractual obligations for indemnification to Shamrock,

Tropicana and BMP. Section 547(c)(4) of the Bankruptcy Code provides that a transfer

may not be avoided if such transfer was "to or for the benefit of a creditor, to the extent

that, after such transfer, such creditor gave new value to or for the benefit of the debtor –

(A) not secured by an otherwise unavoidable security interest; and (B) on account of

which new value the debtor did not make an otherwise unavoidable transfer to or for the

benefit of such creditor." 11 U.S.C. § 547(c)(4). The elements necessary to meet the

defense are that (i) the debtor received new value after the transfer, and (ii) such new

value remained unpaid.  *In re Teligent, Inc.*, 315 B.R. at 314 (internal citations omitted).

The policy behind the new value exception is to encourage creditors to deal with a

troubled business and to promote equal treatment of creditors.  "It recognizes that the

'new value' effectively repays the earlier preference, and offsets the harm to the debtor's

other creditors . . . . Accordingly, 'the relevant inquiry under section 547(c)(4) is whether

the new value replenishes the estate.'"  *Id.* at 315 (internal citations omitted).

    As with the contemporaneous exchange defense, the issue is whether third parties'

forbearance and subsequent inability to file an action against Plaintiff constitutes new

value.  Again, Defendant is required to show that the Debtor has received new value in

the form of "money or money's worth in goods, services, or new credit, or release by a

transferee of property previously transferred to such transferee . . . ."  11 U.S.C. §

547(a)(2).  As previously discussed, Defendant has failed to show that the Debtor's estate

has been replenished by the addition of new value.  Rather, Defendant points only to

forbearance and a hypothetical future action that was never brought.

    "When a creditor threatens to exercise a legal remedy against a debtor, and in

exchange for not so doing extracts a payment for antecedent debt, nothing of value has

accrued to the debtor estate to compensate other creditors for the loss of that payment.

The creditor has not conducted any additional business with the debtor, and equality of

distribution has been compromised.  Such a transaction falls squarely within the ambit of

the preference law, rather than within its exceptions."  *Official Comm. of Unsecured

Creditors of Maxwell Newspapers, Inc. d/b/a/ Daily News v. Travelers Indemnity Co. (In

re Maxwell Newspapers, Inc. d/b/a/ Daily News)*, 192 B.R. 633, 637 (Bankr. S.D.N.Y.

1996).  Similarly, the fact that third parties could not pursue a hypothetical action against

the Debtor as a result of the Debtor's payment of an antecedent debt does not contribute anything that promotes the principle of equality of distribution to all creditors.  Defendant has failed to provide evidence that release of the Lien on the Premises provided new value to the Debtor's estate, and Defendant has therefore failed to meet the requirements of § 547(c)(4).

## IV.    Prejudgment Interest

It is within the Court's discretion to grant or deny prejudgment interest in actions brought under § 547.  *See In re Cyberrebate.com, Inc.*, 296 B.R. 639, 645 (Bankr. E.D.N.Y. 2003)("It is well-settled that bankruptcy courts have discretion to award pre-judgment interest in actions to recover preferential transfers . . . ."), citing *In re Cybermech, Inc.*, 13 F.3d 818, 822 (4th Cir. 1994); *In re Investment Bankers, Inc.*, 4 F.3d 1556, 1566 (10th Cir. 1993); *Smith v. Mark Twain Nat'l Bank*, 805 F.2d 278, 291 (8th Cir. 1986).  Plaintiff cites § 550 of the Bankruptcy Code in its request for prejudgment interest, noting its policy is to restore the estate to the full value of the asset transferred in order to compensate it for the loss of time value of the asset.  *See In re L&T Steel Fabricators, Inc.*, 102 B.R. 511, 521 (Bankr. N.D. La. 1989).  Plaintiff also calculates prejudgment interested from the date the transfer cleared the Debtor's bank, using the Federal rate of interest.  However, some of the delay from the date of the transfer is attributable to Plaintiff's delay in pursuing avoidance recoveries.  Under all of the circumstances of this case, Plaintiff's request for prejudgment interest is granted to the extent that interest will be awarded at the Federal rate from the date of the Complaint.

**Conclusion**

For the reasons stated above, Defendant's motion for summary judgment is denied.  With respect to Plaintiff's motion, Defendant admits that: (i) the Transfer was made to a creditor of the Debtor; (ii) the Transfer was made on account of an antecedent debt; (iii) Plaintiff is entitled to a presumption of insolvency; and (iv) the Transfer was made within 90 days of the debtor's petition date.  (Mem. of Law in Support of Metl-Span, I., Ltd.'s Obj. to Plaintiff's Mtn. for Summary Judgment with Respect to Plaintiff's Claims against Defendant § II (c)).  Since Defendant's other defenses are insufficient and Plaintiff has sufficiently established the elements of its affirmative case under § 547, Plaintiff's motion for summary judgment on its preference claim is granted.  Plaintiff's counsel is directed to settle an appropriate order on five days' notice.

Dated: New York, New York
       November 22, 2006

                                        */s/ Allan L. Gropper*                
                                        UNITED STATES BANKRUPTCY JUDGE